IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **PATRICK WALSH,** | * | |
| Petitioner, | * | |
|  | * | Civil Case No.: RWT 08-2637 |
| v. | * | Criminal Case No.: RWT 05-001 |
| **UNITED STATES OF AMERICA,** | * | |
| Respondent. | * | |

## MEMORANDUM OPINION

Pending before the Court is Petitioner Patrick Walsh's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. In it, Petitioner contends that he was denied his Sixth Amendment right to effective assistance of counsel. Because Petitioner has failed to show that counsel's representation was objectively unreasonable and/or resulted in actual prejudice, the Court will, by separate order, deny Petitioner's § 2255 petition.

**I.**

Following a jury trial, Petitioner was convicted of one count of conspiracy to commit arson and thirty-five counts of arson based upon fires he set at a partially complete housing development in Charles County, Maryland, called Hunter's Brooke. United States v. Walsh, 228 F. App'x 295, 295–96 (4th Cir. 2007), cert. denied, 128 S. Ct. 409 (2007). He was sentenced to 235 months of imprisonment, over three million dollars in restitution, and a special assessment of $3600. Id. at 296. Petitioner appealed his convictions, the Fourth Circuit affirmed, and the United States Supreme Court denied his petition for a writ of certiorari. Id. at 298.

On October 3, 2008, Petitioner timely filed his § 2255 petition, alleging ineffective assistance of counsel based on numerous errors made by counsel before, during, and after trial.

Petitioner also filed a motion to amend his initial § 2255 petition on November 19, 2008 as a matter of right, and a motion to supplement his amended petition on January 14, 2009, which the Court will grant by a separate order.

## II.

In evaluating claims of ineffective assistance of counsel, the Court applies the two prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, Petitioner must show that counsel's representation fell "below an objective standard of reasonableness." Id. at 688. In reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In his § 2255 petition, Petitioner specifically challenges his counsel's failure (1) to request a suppression hearing to challenge the voluntariness of the inculpatory statements he made during post-arrest interrogation, (2) to investigate evidence that could have been used to impeach two Government witnesses, (3) to interview a witness material to the defense's theory of the case, (4) to object to the unreliability of the arson related loss estimates alleged by the Government, and (5) to challenge the Court's instruction of the theory of co-conspirator liability from Pinkerton v. United States, 328 U.S. 640 (1946). (Pet'r Mot. 5–6; Pet'r Mot. To Amend 7.) The Court will address each of these grounds in turn.

### A.

Petitioner first claim of ineffective assistance of counsel is counsel's failure to request a suppression hearing regarding the voluntariness of inculpatory statements Petitioner made to

2

Agent Joseph Bradley of the Federal Bureau of Investigation ("FBI") during post-arrest interrogations. (Pet'r Mot. 5–5(a); Pet'r Mot. To Amend 14.) In particular, Petitioner contends that because FBI Agent Bradley did not inform him that he was under arrest, Petitioner could not have knowingly and voluntarily waived his Miranda rights. (Pet'r Mot. To Amend 13.)

Petitioner is factually incorrect. His trial counsel did file a Motion To Suppress Statements Admissions and Confessions and Request for Hearing on February 28, 2205 (Paper No. 49). In that Motion, counsel specifically requested "a hearing on the voluntariness of any statements, admissions or confessions attributed to him, in accordance with the provisions of Title 18, U.S.C., Section 3501." Thereafter, during evidentiary hearings on April 8, 2005, and on April 14, 2005, defense counsel cross-examined FBI Agent Bradley regarding the voluntariness of Petitioner's post-arrest statements. After hearing all of the evidence, the Court denied the motion to suppress. See United States v. Walsh, No. RWT 05cr001 (D. Md. Apr. 18, 2005) (order summarizing rulings made at the hearings held on April 8, 2005 and April 14, 2005). Because Petitioner's counsel requested a suppression hearing and competently cross-examined FBI Agent Bradley, Petitioner's first basis for ineffective assistance of counsel fails.

**B.**

Petitioner next contends that counsel failed to investigate evidence that could have been used to impeach the testimony of two government witnesses, Jesse Robinson and Anthony Fisher. (Pet'r Mot. 5.) At trial, Ms. Robinson testified that she made an anonymous report to the Charles County Sheriff's Office regarding the possible plans of Petitioner to place a bomb at a bridge. (Pet'r Mot. To Amend 16.) Post trial, Petitioner requested and received records from the Sheriff's Office relating to the charges against him, and notably absent from the records was the anonymous report made by Ms. Robinson. (Id.) Petitioner contends that failure to obtain the

Sheriff's Office records and to impeach Ms. Robinson based on the absence of the anonymous report constitutes ineffective assistance of counsel. (Id.)

Mr. Fisher testified that he and Petitioner were at the Waldorf Mall on October 30, 2004, and that Petitioner was present when a digital heat thermometer was purchased. (Id. at 17.) Based on Petitioner's work records, which reflect that he was at work on October 30, 2004, from 3:45 p.m. to 11:40 p.m., Petitioner contends that he could not have accompanied Mr. Fisher to the Waldorf Mall. (Id. at 17–18.) Petitioner argues that counsel's failure to obtain Petitioner's work records and to impeach Mr. Fisher constitutes ineffective assistance of counsel. (Id. at 18.)

In response, the Government argues that neither witness was crucial to the prosecution's case and that Petitioner's counsel vigorously cross-examined both witnesses (Gov't Opp'n 13.) In so doing, the Government highlights defense counsel's pursuit of other avenues to impeach both Ms. Robinson and Mr. Fisher. (Id.)

Trial counsel has "an obligation to investigate possible methods for impeaching a prosecution witness, and failure to do so may constitute ineffective assistance of counsel." Tucker v. Ozmint, 350 F.3d 433, 444 (4th Cir. 2003). "The reasonableness of the investigation depends, in part, upon the importance of the witness to the prosecution's case . . . ." Id. A failure to investigate methods of impeaching a crucial witness, but not necessarily every witness mentioned by the defendant, may indicate an inadequate investigation. Id.

The Court finds that Ms. Robinson was not a crucial witness, that counsel reasonably pursued alternative avenues of impeaching Ms. Robinson, and that impeachment based on the absence of her report would not have changed the jury verdict. The prosecution used Ms. Robinson's testimony as part of its contention that Petitioner engaged in a series of fires and explosives prior to setting fire to Hunter's Brooke. (Gov't Opp'n 5; Pet'r Reply 3.) Several

witnesses other than Ms. Robinson, including Daniel Wampler and Jonathan Cannon, testified that prior to December of 2006, Petitioner talked about bombs and fires, and Petitioner admitted to his participation in several acts involving explosives and fire. (Id. at 5–6.)  Moreover, defense counsel sought to impeach Ms. Robinson and diminish the significance of her testimony by establishing that she had no personal knowledge of a bomb actually being placed at the bridge and that the bridge was never in fact blown up.  (Id. at 13.)  Considering the purpose of the testimony, counsel's attempted impeachment of Ms. Robinson, and the testimony of the other witnesses, the Court finds that counsel's representation with respect to Ms. Robinson was effective and that the jury's determination of Petitioner's guilt would likely remain unchanged even if counsel had sought to impeach Ms. Robinson based on the absence of her anonymous report.

   Similarly, the Court finds that Mr. Fisher was not a crucial witness, that counsel reasonably pursued alternative avenues of diminishing the significance of Mr. Fisher's testimony, and that impeachment based on the work records would not have changed the jury verdict.  The prosecution used Mr. Fisher's testimony about his trip to Waldorf Mall to show that Petitioner was present when the digital heat thermometer was purchased in October of 2004. (Gov't Opp'n 13–14.)  Mr. Fisher's testimony was corroborated by the discovery of a digital heat thermometer in one of the cars operated by Petitioner as well as the testimony of Mr. Cannon. (Id.)  Defense counsel sought to diminish the importance of Mr. Fisher's testimony by suggesting the thermometer was a "ghost hunting" tool and by implying that Mr. Fisher himself was one of the arsonists.  (Id.; Pet'r Mot. To Amend 26.)  The purpose of the testimony, counsel's attempt to diminish its importance, and the corroborating evidence and Mr. Cannon's testimony all support the Court's conclusion that counsel represented Petitioner effectively with respect to Mr. Fisher

and that it is highly improbable that the jury verdict would have been different if counsel had used Petitioner's work records to attempt to impeach Mr. Fisher.

## C.

Petitioner's third claim of ineffective assistance counsel is his counsel's failure to call Brandon Wilson and Sharon Buckley as witnesses. (Pet'r Mot. To Amend 18.) Petitioner argues that counsel unreasonably decided not to interview Mr. Wilson. (Id. at 19.) If counsel had interviewed Mr. Wilson and had called him as a defense witness, Petitioner argues, his testimony would have established that he had been with Petitioner for several hours prior to the Hunter Brooke arson and that Petitioner had not acted in an abnormal or clandestine manner during those hours. (Id.) This testimony would have been relevant, Petitioner contends, to rebut the prosecution's contention that Petitioner had acted in secrecy while in the presence of others, which Petitioner believes is the hallmark of a conspiracy. (Id.)

As for Ms. Buckley, Petitioner contends that Ms. Buckley would have testified that Petitioner was logged onto a virtual game called "Night Mist" on December 6, 2004, from 2:56 a.m. until 3:11 a.m., and again at 4:13 a.m. (Id. at 20–22.) This testimony would have supported Petitioner's alibi defense because the Government posited that the fire was set between the hours of 3 a.m. and 4 a.m. on December 6, 2004. (Id. at 22; Pet'r Mot. To Supplement 2.)

Failure to investigate a plausible line of defense may amount to ineffective assistance of counsel. Tucker, 350 F.3d at 440. A decision not to investigate is evaluated for reasonableness under the circumstances, and a "heavy measure of deference" is applied to counsel's judgments. Id. (quotation marks omitted). Where counsel has in fact interviewed a particular witness and made a strategic decision not to call that witness for the defense, the question again is whether the decision was reasonable. Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000).

As a preliminary matter, the Court finds that defense counsel reasonably investigated Mr. Wilson's testimony without having interviewed him. It is clear from Petitioner's own motion that defense counsel knew about the information that Petitioner claims defense counsel did not obtain through an interview with Mr. Wilson. See Pet'r Mot. To Amend 20 ("Counsel was cognizant that Petitioner had been with Wilson (and others) during the hours preceding the arson . . . ."). "[W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." Strickland, 466 U.S. at 691. Aware of Mr. Wilson's knowledge and utility to the potential line of defense, counsel reasonably decided not to interview him.

As for defense counsel's decisions to not call Mr. Wilson and Ms. Buckley as defense witnesses, the Court concludes that both were objectively reasonable. Counsel reasonably decided that the testimony Mr. Wilson would have offered at trial was unnecessary in light of evidence presented at trial and testimony elicited from other defense witnesses. (Gov't Opp'n 17.) Cell phone records established that Petitioner and Mr. Wilson were together on the night of the arson and cross-examination of Ms. Robinson and Mr. Cannon established that Petitioner was not acting strangely or nervously that night. (Id. at 17–18.) If called to testify, Mr. Wilson also would have been subjected to cross-examination regarding his bias as Petitioner's good friend and his own participation in acts involving fires and explosives. (Id. at 17 n.3.) Based on this record and a potentially damaging cross-examination, counsel reasonably chose not to call Mr. Wilson as a defense witness, and Petitioner has not shown actual prejudice resulting from that decision.

7

Having interviewed Ms. Buckley, defense counsel also reasonably decided that her testimony would likely impair Petitioner's defense. Counsel explained to Petitioner that the jury might infer from Ms. Buckley's testimony that, because Petitioner and Ms. Buckley were good friends and together the night of the arson, Ms. Buckley logged onto the game Night Mist for Petitioner to assist Petitioner in fabricating an alibi. (Pet'r Mot. To Amend 20.) Petitioner's own explanation of counsel's decision emanates reasonableness. In addition, the Government provides several other facts it would have elicited on cross-examination of Ms. Buckley that would have made Ms. Buckley's testimony less believable. (Gov't Opp'n 19.) Considering the potential damage Ms. Buckley's testimony might cause the defense, counsel reasonably decided not to call Ms. Buckley, and Petitioner has not shown actual prejudice as a result.

### D.

Petitioner's fourth claim of ineffective assistance of counsel centers on counsel's alleged failure to challenge the reliability of the arson related loss estimates used to calculate the base offense level for sentencing. (Pet'r Mot. To Amend 29.) Petitioner argues that the loss estimate of $3.2 million set forth by the Hunter's Brooke Fire Marshal was unreliable and that counsel acted unreasonably by not objecting to it.[1] (Id. at 30.) Petitioner also argues that because the jury did not determine the loss amounts, the Court was not allowed to enhance Petitioner's sentence based on this factor. (Id. at 36; Pet'r Reply 7.)

In response, the Government contends that defense counsel acted reasonably by not arguing futilely about loss calculations. (Gov't Opp'n 20.) The Government points out that in addition to the Hunter's Brook Fire Marshal's loss estimate, the Court relied on an affidavit signed by Michael Thibodeaux, a representative of Lennar Corporation, which reported updated restitution figures. (Id. Ex.1–2.) In the Government's view, the affidavit reinforced and

corroborated the previous loss calculations that had been used for guideline purposes. (Id.) As for the sentence enhancement, the Government contends that the Court properly sentenced Petitioner based on the guidelines as modified by United States v. Booker, 543 U.S. 220 (2005). (Id. at 24.)

The Sixth Amendment right to effective assistance of counsel applies during sentencing proceedings. See Mempa v. Rhay, 389 U.S. 128, 134 (1967); United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996). The failure of counsel to object to an improper application of the United States Sentencing Guidelines ("USSG") may amount to an ineffective assistance of counsel. Breckenridge, 93 F.3d at 136. Application note 3 of USSG § 2B1.1 requires the district court to make a reasonable estimate of the loss incurred to the damaged property. See United States v. Ruhe, 191 F.3d 376, 390 (4th Cir. 1999) (requiring a "reasonable estimate" of the value of the loss of the damaged property "given available information").

Here, the Court determines that counsel reasonably and competently decided to not object to the Court's application of the Sentencing Guidelines. In arriving at a loss valuation, the Court relied on the loss estimates by the Hunter's Brook Fire Marshal and Mr. Thibodeaux. Because the Court made a reasonable estimate of the loss incurred to the damaged property, defense counsel reasonably did not object to its application of USSG § 2B1.1. Moreover, even if defense counsel had objected to the reliability of the $3.2 million loss estimate, it is not probable that the Court would have sustained such an objection. As for the actual sentence, the Court was not required to allow the jury to decide the actual loss amounts in order to enhance Petitioner's sentence under USSG § 2B1.1. Thus, the Court sees no merit to Petitioner's fourth claim of ineffective assistance of counsel.

**E.**

Petitioner's final claim of ineffective assistance of counsel involves allegations that appellate counsel failed to appeal the Court's instruction to the jury regarding the Pinkerton theory of co-conspirator liability. (Pet'r Mot. To Amend 40.) Petitioner argues that evidence in the record did not support Petitioner's involvement in a conspiracy, and that the Court erred in delivering a jury instruction unsupported by the evidence. (Id. at 41–46.)

The Government contends that the Pinkerton jury instruction was appropriate because it presented sufficient evidence at trial that Petitioner was involved in a conspiracy to commit arsons. (Gov't Opp'n 21.)

The reasonableness of appellate counsel's performance is gauged by the viability of the omitted claim and whether decision to omit the claims was objectively reasonable in light of prevailing professional norms. See Strickland, 466 U.S. at 688. Here, the viability of the omitted claim depends on whether the Court properly delivered its jury instruction regarding the Pinkerton theory of co-conspirator liability. A jury instruction is proper "if there is a foundation in evidence to support [the proposed instruction]." United States v. Schnabel, 939 F.2d 197, 203–04 (4th Cir. 1991).

The Court concludes that appellate counsel acted reasonably and competently in deciding not to appeal the Pinkerton jury instruction. The Pinkerton doctrine imposes vicarious liability on a co-conspirator for the substantive offenses committed by other members of the conspiracy when the offenses occur during and in furtherance of the conspiracy. See Pinkerton, 328 U.S. at 646–47. The Court finds ample evidence to support a Pinkerton instruction. At trial, the Government relied upon physical evidence and the testimony of Petitioner's co-conspirator Jeremy Parady, law enforcement witnesses, cooperators, and civilian witnesses to prove

Petitioner conspired to commit and actually committed the Hunter's Brooke arson. Petitioner chose to put on an alibi defense that he was in his basement bedroom at the time the fires were started at Hunter's Brooke.[2] Under <u>Pinkerton</u>, the jury was entitled to consider the possibility that Petitioner was elsewhere at the time of the fire, but that he was nonetheless a member of the conspiracy. Thus, Petitioner has failed to demonstrate that counsel's decision to not appeal the delivery of the <u>Pinkerton</u> jury instruction constituted ineffective assistance of counsel.

**III.**

For the foregoing reasons, the Court will, by separate order, grant Petitioner's motion to supplement his 28 U.S.C. § 2255 Motion (Paper No. 355), but deny Petitioner's § 2255 petition (Paper No. 349).

November 3, 2009

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

[2] Petitioner is mistaken in his assertion that the Court declined to instruct the jury regarding his alibi defense. (Pet'r Mot. To Amend 49–50.) The Court rearranged the jury instructions, but ultimately delivered the form alibi instruction minus the second paragraph. (Gov't Opp'n 22 n.4.)